# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**RICKIE LEE WIER,**

                        Plaintiff,

      v.

**NANCY A. BERRYHILL,** Acting
Commissioner of Social Security

                        Defendant.

_____

No. 1:16-cv-02269-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

        Plaintiff, Rickie Lee Wier, brings this action for judicial review of the Commissioner of Social Security's decision denying his application for Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

        On May 22, 2012, Wier filed an application for Disability Insurance Benefits, alleging disability as of June 17, 2005 through his date of last insured, December 31, 2010. Wier was denied initially upon application. After a hearing and supplemental hearing, an Administrative Law Judge ("ALJ") determined that Wier was not disabled and denied his claim. Wier now contends that the ALJ erred 1) in weighing the medical opinion of three treating psychiatrists and two examining psychiatrists, 2) in failing to give clear and convincing reasons for rejecting Wier's testimony, and 3) in failing to prove that Wier retains the ability to perform other work in the national economy. Because the Commissioner of Social Security's decision was based on improper reasons for discounting medical opinions and Wier's testimony, the case is REMANDED for a proper evaluation of the medical evidence in accordance with this opinion and a recalculation of Wier's residual functional capacity.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner of Social Security

("Commissioner") if her decision is based on proper legal standards and the legal findings are

supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting

*Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial

evidence exists, the district court must review the administrative record as a whole, weighing

both the evidence that supports and detracts from the decision of the Administrative Law Judge.

*Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the claimant satisfies his

burden with respect to the first four steps, the burden then shifts to the Commissioner with regard

to step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate

that the claimant is capable of making an adjustment to other work after considering the

claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

The ALJ concluded that Wier was not disabled. First, the ALJ found that the claimant's

date of last insured was December 31, 2010. Tr. 19. At step one, the ALJ found that the claimant

had not engaged in substantial gainful activity since the alleged onset date of June 17, 2005. Tr.

19. At step two, the ALJ found that the claimant had four severe impairments: adjustment

disorder, depression, post-traumatic stress disorder, and personality disorder. Tr. 19. The ALJ

found that Wier's headaches were not a severe impairment because they had been resolved with treatment. Tr. 20. At step three, the ALJ found that Wier's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

Prior to step four, the ALJ found that Wier's RFC enabled him to perform a full range of work at all exertional levels but with the nonexertional limitations of no public contact, no teamwork assignments, and no strict hourly production quota. Tr. 21.

In determining the RFC, the ALJ assigned weight to medical opinions from more than eleven doctors that treated, examined, or reviewed Wier during the course of his treatment and application for benefits.

## I.   **The ALJ's Decision**

On January 18, 2003, Wier experienced a traumatic event. While working his normal route as a public transit bus driver, a passenger boarded his bus and pointed a gun at Wier for a period of time before jumping off the bus. After this traumatic event, Wier suffered from insomnia, headaches, and significant anxiety. Wier started seeing Dr. Boyd, who provided him with therapy treatments. Early in his treatment, Dr. Boyd advocated for Wier to undergo cognitive behavioral therapy (CBT) and for Wier to transition back to work in January 2004. Tr. 524. Over the course of treatment, Dr. Boyd assessed multiple Global Assessment of Functioning (GAF) scores, which ranged from a high of 64 in December 2003 to a low of 49 in October 2005. Tr. 26 The ALJ afforded partial weight to these GAF scores and found that 1) they were generally consistent with the longitudinal medical record, 2) Dr. Boyd had a long treating relationship with Wier, 3) GAF scores are not very reliable regarding a person's overall mental

functioning and account for medical and socio-economic factors not directly related to mental functioning, and 4) the scores were remote in time and varied from date to date. Tr. 26.

Shortly after his treatment with Dr. Boyd, Wier also received treatment from Dr. Dillon. Dr. Dillon provided on opinion regarding Wier in January 2004, finding that Wier had a GAF of 55, could gradually return to work, and should continue psychiatric medicine adjustments. Tr. 27. In June 2004, during which time Wier had returned to work, Dr. Dillon found that Wier had a GAF of 55-60 and that he continued to suffer from considerable symptoms. Tr. 27. One year later, on June 6, 2005, Dr. Dillon found Wier to have a GAF of 45-50. Tr. 854. The ALJ gave partial weight to Dr. Dillon's opinions finding that they generally tracked the longitudinal medical evidence, but that they were for a relatively remote period of time and were tailored to the Mental Health Impairments under the State of Washington's Industrial Insurance Act. Tr. 27. Regarding the last point, the ALJ found that the Washington system "requires application of a general rule versus [a] case by case assessment of functional impact." Tr. 27. More specifically, once making a categorical determination under the Industrial Insurance Act, a patient is presumed to have certain functional limitations, even if the underlying symptoms only support the overall categorical determination but not necessarily *all* of the associated functional limitations.

The ALJ next considered treating psychiatrist Dr. Weimer. Dr. Weimer treated Wier for approximately 2 years. In December 2007, Dr. Weimer found Wier to have a GAF score of 50 and diagnosed Wier with PTSD and major depressive disorder. Tr. 27. The ALJ gave great weight to the diagnosis but little weight to the GAF score because the low score was not consistent with the longitudinal record "as the client exhibited depression and anxiety, but no hallucinations, delusions, or suicidal ideation." Tr. 27.

Next, the ALJ considered treating psychiatrist Dr. Martin. During the course of his treatment, Dr. Martin found that Wier had moderate limitations that would impact working including remembering locations, following work-like procedures, carrying out simple instructions, maintaining attention, and making simple work related decisions. Tr. 27. Dr. Martin found that Wier had marked limitations in the ability to work in coordination with others, to complete a normal work day, and to perform at a consistent pace. Tr. 27. Regarding social interaction, Dr. Martin found Wier to have moderate limitations to ask simple questions and maintain socially appropriate behavior, including personal hygiene. Tr. 27. Dr. Martin also found Wier to have marked limitations in interacting with the general public, in accepting instructions and criticism from supervisors, and in getting along with coworkers or peers. Tr. 27. Lastly, in regards to adaptation, Dr. Martin found Wier to have moderate limitations in responding to changes in the work setting, taking precautions with work hazards, and setting goals or planning. Tr. 28. Dr. Martin found Wier to have marked limitations with respect to traveling in unfamiliar places or using public transportation. Tr. 28.

The ALJ gave partial weight to Dr. Martin's opinion. Tr. 28. The ALJ found that the limitations identified by Dr. Martin only precluded public work, not all kinds of work. Tr. 28. The ALJ also discounted Dr. Martin's finding that Wier was not capable of work because that decision is reserved to the Commissioner. Tr. 28. The ALJ noted that Dr. Martin said "his May 2013 opinion covered the entire treatment period from 2009 forward, a period in which the objective records noted that the claimant repeatedly fluctuated between improvement and symptomatic relapse." Tr. 28.

After discounting the opinions of the treating physicians, the ALJ gave great weight to the reviewing physician, Dr. Nance. Tr. 28. Dr. Nance reviewed Wier's full history and

ultimately assessed his work limitations as either mild or moderate, with the exception of finding that Wier had a marked limitation in interacting appropriately with the public. Tr. 28. Dr. Nance found that Wier had "mild restriction to activities of daily living; moderate difficulties with social functioning; moderate issues with maintaining concentration, persistence or pace; and mild extended-duration episodes of decompensation." Tr. 28 (internal citation omitted). The ALJ gave great weight to Dr. Nance's opinion because 1) it was consistent with the longitudinal record, 2) was based on a review of the entire record, and 3) considered the impact of Wier's conditions on his ability to perform work in general, not just as a bus driver. 28.

After analyzing the reports of the treating and reviewing physicians, the ALJ considered five consultative examiners that had examined Wier at various points in his treatment. Dr. Reagan examined Wier in September of 2008 and assessed a GAF of 50-60. The ALJ gave great weight to this opinion because it was "well supported by objective diagnostic testing, his trained observations, an impartial analysis of the evidence of record, and a well-reasoned conclusion." Tr. 28-29.

The ALJ discussed two consultative examiners together: Dr. Early and Dr. Powell. Dr. Early examined Wier in August 2007, Tr. 839, and assessed a GAF score of 45, Tr. 845. Dr. Early believe that it was unlikely that Wier would be able to maintain meaningful employment as a result of his psychological disabilities. Tr. 845.

Dr. Powell examined Wier on September 29, 2009, Tr. 959, and assessed a GAF score of 50, Tr. 966. Dr. Powell thought this GAF score appropriate because Wier was "severely depressed" and has "suicidal ideation and irritability." Tr. 966. Dr. Powell diagnosed Wier with PTSD and chronic, severe depression. Tr. 966. Dr. Powell determined that Wier was not

currently capable of working, and because the impairment had existed for over 6 years, Dr.

Powell opined "there is a very good likelihood that it could be permanent." Tr. 967.

The ALJ gave partial weight to the opinions of Dr. Early and Dr. Powell. The ALJ found

that the opinions were generally consistent with the longitudinal medical evidence but that they

were "remote in time, having occurred in 2003" and "were tailored to . . . the State of

Washington's Industrial Insurance Act." Tr. 29.

The ALJ next considered a consultative exam by Dr. Wahl, which occurred on December

30, 2013. Tr. 1176. Dr. Wahl found Wier to only have mild and moderate limitations regarding

ability to work, Tr. 1179-80, and found Wier to have a current GAF of 60, Tr. 1178.The ALJ

gave great weight to Dr. Wahl's opinion because it was consistent with the longitudinal record,

consistent with the reviewing doctor, Dr. Nance, and was based on an examination of Wier. Tr.

30.

The ALJ then considered consultative examiner Dr. Forsyth, a state agency psychological

consultant at the initial review level, whose opinion was affirmed at the reconsideration level by

Dr. Kennemer. Tr. 30. Dr. Forsyth overall found mild to moderate limitations in work capacity.

Tr. 30. The ALJ gave little weight to these opinions because Dr. Forsyth "did not adequately

accommodate the claimant's impairments in combination" and because the opinions were only

based on file review and not the additional evidence produced during the hearing. Tr. 30.

In addition to the medical evidence, the ALJ also considered and subsequently discounted

Wier's testimony regarding his impairments. Tr. 25. The ALJ found Wier's testimony to not be

credible for two reasons: 1) because Wier's testimony was not consistent with the objective

medical evidence, which included periods of improvement, and because Wier did not follow

through in participating in CBT treatment as recommended, and 2) because Wier's testimony

regarding intact daily activities was at least partially inconsistent with what he reported to his doctors, including the number of hallucinations he experienced, and daily living activities that he participated in, such as preparing meals and driving a car, and social activities that he participated in, such as hunting and fishing. Tr. 25. After considering the above medical opinions and Wier's testimony, the ALJ moved on to step four.

At step four, the ALJ considered if Wier can perform past relevant work, as it is either generally performed in the national economy or as it was actually performed previously by Wier. Tr. 30. The ALJ found that Wier's past relevant work was his job as a bus driver. Tr. 30. Relying on the vocational expert, the ALJ found that because of Wier's residual functional capacity, Wier cannot perform any of his past relevant work, either generally in the national economy or as actually performed. Tr. 31.

At step five, the ALJ considered Wier's residual functional capacity, age, education, and work experience to determine if a work adjustment could be made. Tr. 31. In consultation with a vocational expert (VE), the ALJ found that there were jobs that exist in significant numbers in the national economy that Wier could have performed, which include occupations such as a cleaner, laundry worker, and packager. Tr. 32. Because Wier had the capacity to perform these jobs even with his nonexertional limitations, the ALJ found Wier to be "not disabled" for purposes of the Social Security Act. Tr. 32.

## II. <u>Weight Assigned to Treating Psychiatrists</u>

Wier challenges the weight assigned to his three treating psychiatrists, Drs. Dillon, Weimer, and Martin. For the reasons below, I agree with Wier that the ALJ erred in discounting the three treating psychiatrists.

### a. <u>Dr. Thomas Dillon</u>

Wier argues that the ALJ wrongly discounted Dr. Dillon's medical opinions. Pl.'s Br. 5. The ALJ discounted the opinions claiming they were remote in time and were tailored to the State of Washington's Industrial Insurance Act. *Id.* Wier argues that they were not remote in time, as they were made over a period of two years, 2004-2005. *Id.* Additionally, Wier contends that they although Dr. Dillon may have made findings regarding Wier's impairment as a "Category 2" under the State of Washington's Industrial Insurance Act, Dr. Dillon's examinations still contained extensive descriptive findings describing Wier's impairment that are helpful for determining his residual functional capacity. *Id.*

The Commissioner responds that that ALJ was correct in discounting the medical opinion, as many of the observations predated the alleged onset date of June 17, 2005. Def.'s Br. 8. Further, the Commissioner argues that discounting the opinions because they were "tailored" to the Industrial Insurance Act was proper and that "[t]he ALJ had previously worked as a Washington State Industrial Appeals Judge and understood the differences between the systems." *Id.*

I agree with Wier that the ALJ wrongly discounted Dr. Dillon's medical opinion. First regarding the timing of Dr. Dillon's observations, Dr. Dillon performed examinations throughout 2004 and 2005 and outpatient treatment continued to 2007. Relevant to Wier's case, Dr. Dillon performed an examination on June 9, 2005 and assessed a GAF at that time of 45-50. Tr. 854. This is within weeks of Wier's alleged onset date of June 17, 2005, and Dr. Dillon's observations continued after the alleged onset date. Tr. 846-915. Discounting Dr. Dillon's medical opinion as being remote in time was improper.

Discounting Dr. Dillon's medical opinion and observations because he also made findings regarding Wier's impairment under Washington's Industrial Insurance Act was also

improper. Dr. Dillon wrote extensively about his observations, evaluations, and diagnoses of Wier's impairments. Tr. 543-555, 846-915. Those observations, evaluations, and diagnoses were then used to make a categorical finding for purposes of the Industrial Insurance Act. While that categorical finding may not be relevant or persuasive for this adjudication, the underlying observations, evaluations, and diagnoses contained in the record certainly are.[1] In conclusion, the ALJ gave no valid reasons for discounting Dr. Dillon's medical opinion.

### b.  Dr. Dennis Weimer

Wier argues that the ALJ improperly discounted the GAF score of 50 assessed by Dr. Weimer. Pl.'s Br. 6. The ALJ discounted the GAF score because it was not consistent with the longitudinal record and because "[Wier] exhibited depression and anxiety, but no hallucinations, delusions, or suicidal ideation." Tr. 27. Wier argues that hallucinations, delusions, or suicidal ideation are not required for a GAF score of 50, and that the GAF score could instead be based on "any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Pl.'s Br. 6 (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorder IV-Text Revision)*, 34 (4th ed. 2000) (DSM-IV-TR). Wier argues that Dr. Weimer had sufficient medical observations to meet this standard, including observing Wier's constricted affect, depression, anxiety, and observations that Wier was "not far from inpatient hospitalization." Pl.'s Br. 6.

The Commissioner adds little legal argument in defense of the ALJ's decision. The Commissioner claims that the GAF score was not consistent with the longitudinal medical record, and alternatively, that discounting the GAF score was proper because Wier's impairments do not meet the categorical requirements for that low of a GAF score. Def.'s Br. 9.

---

[1] The Commissioner also argues that this is harmless error, as the Commissioner believes that Dr. Dillon's opinions are no different than the conclusion that the ALJ ultimately reached. However, Dr. Dillon's opinions, if fully credited, would be part of the broader longitudinal record and help to better explain findings by subsequent doctors.

The ALJ improperly discounted Dr. Weimer's GAF score. The ALJ discounted the GAF score because it was not consistent with the longitudinal record and because Wier did not exhibit "hallucinations, delusions, or suicidal ideation." Tr. 27. Regarding the longitudinal record, the ALJ failed to point out how the GAF score was inconsistent. Moreover, Dr. Weimer's medical observations fully support the requirements of the low GAF score.

Hallucinations, delusions, or suicidal ideation are not required for a low GAF score. A GAF score of 41-50 is defined by an individual with "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorder IV-Text Revision)*, 34 (4th ed. 2000) (DSM-IV-TR). Wier and the Commissioner agree that he does not meet "serious symptoms" listed above. However, Dr. Weimer's observations, including the severity of Wier's depression and likely inability to work at that time, support a finding that Wier does have "serious impairments in social, occupational, or school functioning."

The Commissioner contends that the ALJ's failure to discuss Dr. Weimer's observations that Wier is unable to work is harmless error, as that determination is reserved to the Commissioner. Def.'s Br. 9. The Commissioner is correct that the ultimate issue of disability is reserved to the Commissioner. Here, however, Dr. Weimer's observations are not just relevant on the ultimate issue of disability, but rather are relevant in supporting his determination of the low GAF score discussed above. Dr. Weimer's observations and findings support a serious occupational impairment, which is a factor in the definition of a GAF score of 41-50.

Because Dr. Weimer's medical observations fully support the low GAF score, and because hallucinations, delusions, or suicidal ideation are not required for a low GAF score, the ALJ improperly discounted Dr. Weimer's medical opinion.

### c. **Dr. James Martin**

The ALJ afforded partial weight to Dr. Martin's opinion because 1) it only precludes public work, not all work, 2) the determination of whether a claimant is capable of work is reserved to the Commissioner, and 3) the opinion covered the entire treatment period from 2009 to 2013, during which Wier fluctuated between improvement and symptomatic relapse. Tr. 28.

Wier contends that the ALJ "read[s] the treating psychiatrist's opinion too narrowly." Pl.'s Br. 8. Wier argues that although the ALJ accommodated some of the "marked limitations" identified by Dr. Martin by limiting Wier to nonpublic work, the ALJ ignored other limitations that would preclude all work such as the ability to work in coordination with others without being distracted, the ability to complete a normal workday and workweek without interruption, and the ability to accept instructions and criticism from supervisors. These limitations would be present in any job, regardless of whether it is defined as nonpublic or as simple work without teamwork assignments. *Id.* Next, Wier argues that discounting Dr. Martin's opinion was improper because, although the ultimate conclusion on the ability to work is reserved to the Commissioner, this is not a valid reason to discount Dr. Martin's detailed and qualitative assessments that describe Wier's limitations and impairments. *Id.* at 9. Lastly, Wier argues that discounting the opinion because his symptoms waxed and waned during the time period that Dr. Martin's assessment covers (2009 to 2013) is improper. *Id.*

In response, the Commissioner first responds that the marked limitations by Dr. Martin were at least partially accommodated by limiting the Plaintiff to no teamwork assignments,

simple work, and work without production quotas. Def.'s Br. 10. Second, the Commissioner

responds that an opinion on an issue reserved to the Commissioner, such as the ability to work, is

not entitled to special significance. *Id.* Third, the Commissioner responds that the fluctuation in

symptoms is a relevant reason for discounting Dr. Martin's opinion because an RFC assesses the

most that a claimant can perform, not the least. *Id.*

 I agree with Wier that the ALJ seemingly ignored many of the "marked limitations" that

Dr. Martin identified, including marked limitations regarding the ability to complete a normal

workday and workweek without interruption and the ability to accept instructions and criticism

from supervisors. These marked limitations would certainly impair Wier's ability to work, even

if the work was limited to nonpublic work consisting of simple tasks. Failing to account for these

marked limitations would be acceptable if the ALJ provided another permissible reason for

discounting Dr. Martin's medical opinion, however, the ALJ failed to do so. The two remaining

reasons that the ALJ gave for discounting Dr. Martin's medical opinion must also fail. As

previously discussed above, while the determination of Wier's ability to work is ultimately

reserved to the Commissioner, Dr. Martin's medical opinion provides ample descriptive medical

observations. It is these medical findings that led Dr. Martin to his observation that Wier was

"incapable of working" in 2009. Tr. 1147. While the ultimate conclusion is reserved to the

Commissioner, that is not a reason to discount the underlying relevant medical observations.

Lastly, the waxing and waning of a claimant's symptoms is not a sufficient reason to discount a

medical opinion. "[A treating physician's] statements must be read in context of the overall

diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and

depression makes some improvement does not mean that the person's impairments no longer

seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195,

1205 (9th Cir. 2001). In sum, the ALJ failed to provide legally sufficient reasons for discounting Dr. Martin's opinion.

### d. **Treating Psychiatrists as Compared to Examining and Reviewing Doctors**

Wier argues that the ALJ erred in failing to address the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6) by choosing to discount the treating physicians' opinions relative to the opinions of examining and reviewing physicians. These factors include the length of treating relationship, the frequency examination, the nature and extent of the treatment, and the overall supportability and consistency of the medical opinions. 20 C.F.R. § 404.1527(c)(2)-(6). The Commissioner does little to refute this argument.

As discussed above, I agree with Wier that the ALJ failed to use valid reasons for discounting treating medical opinions, failed to address many of the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6), and inadequately explained her reasons for discounting treating psychiatrists. Treating sources are generally given more weight, 20 C.F.R. § 404.1527(c)(2), and the weight assigned can significantly impact the determination of a claimant's RFC. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* In rejecting the opinions of Drs. Dillon, Weimer, and Martin, as discussed in more detail above, the ALJ failed to meet the threshold under either standard.

### III. <u>Weight Assigned to Examining and Reviewing Psychiatrists and Psychologists</u>

Wier also challenges the weight accorded to the opinions of examining and reviewing psychiatrists and psychologists.

#### a. <u>Dr. Charles Reagan and Dr. Gail Wahl</u>

Wier claims that the ALJ erred in giving "great weight" to Drs. Reagan and Wahl. Pl.'s Br. 12. Dr. Reagan gave a second opinion regarding Wier's treatment at the request of Dr. Weimer. Tr. 933. Dr. Reagan examined Wier one time on September 22, 2008, assessed a GAF of 50-60, and diagnosed him with PTSD. Tr. 933-35. The ALJ gave great weight to Dr. Reagan's three page report saying it is "well supported by objective diagnostic testing, his trained observations, an impartial analysis of the evidence of [the] record, and a well reasoned conclusion." Tr. 29.

Similarly, Dr. Wahl examined Wier one time, on December 30, 2013, approximately 3 years after the date of last insured. Tr. 1176. Dr. Wahl provided a brief medical opinion, including a Medical Source Statement identifying only moderate limitations. Tr. 1176-81. The ALJ gave great weight to Dr. Wahl's opinion because "it [was] consistent with the longitudinal medical record, [was] consistent with the opinions of the medical expert at the hearing level, and was based on [an] actual examination of the client." Tr. 30.

Regarding Dr. Reagan, Wier claims the ALJ erred because 1) the ALJ did not consider that the wide range of the GAF score of 50-60 indicates there would be serious symptoms at least some of the time, 2) that Dr. Reagan did not give an explanation for his GAF score, and 3) that the ALJ gave no explanation as to why Dr. Reagan's report was supported by "trained observations" and impartiality as compared with the other treating and examining doctors. Pl.'s Br. 13. Regarding Dr. Wahl, Wier claims that the ALJ erred in giving great weight because it is

not consistent with the medical evidence and conflicts with the three treating and two examining psychiatrists. *Id.*

The Commissioner responds that the ALJ is not required to give certain reasons for giving great weight to an opinion and is only required to give "good reasons" for discounting a treating medical opinion. Def.'s Br. 11 (citing 20 C.F.R. § 404.1527(c)(2) (2015)). Rather, the ALJ is only required to "explain in the decision the weight given" to examining doctors. Def.'s Br. 11; *see* 20 C.F.R. § 404.1527(e)(2)(ii) (2015).

I agree with the Commissioner that the ALJ met her minimal burden of explaining why she gave weight to Dr. Reagan's GAF score and Dr. Wahl's opinion. *See* 20 C.F.R. § 404.1527(e)(2)(ii) (2015). The ALJ has minimal obligations when giving weight to an examining medical opinion, as opposed to the more expansive explanation that must be given when discounting a treating physician's medical opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Although Dr. Reagan's opinion was very remote in time and only three pages, and Dr. Wahl's opinion was similarly brief and three years after the date of last insured, it was within the ALJ's discretion to give weight to Drs. Reagan and Wahl as examining psychiatrists.

### b. **Dr. Ronald Early and Dr. Diane Powell**

Wier next claims that the ALJ erred in discounting the opinions of examining psychiatrists Drs. Early and Powell. Dr. Early examined Wier on August 10, 2007 and reviewed his full psychiatric medical records, exceeding 750 pages at the time. Tr. 839. Dr. Early made his own findings and conclusions including assessing a GAF of 45, finding that Wier "has marked symptoms which cause him to have to leave [public settings] and impair his ability to function effectively," and making a categorical determination under Washington's Industrial Insurance Act. Tr. 844-45.

Dr. Powell examined Wier on September 25, 2009 and also fully reviewed Wier's prior medical records. Tr. 959. Dr. Powell made his own findings and conclusions including assessing a GAF of 50, Tr. 966, stating that Wier's "symptoms cause significant impairment in his social and occupational life," Tr. 967, and ultimately made a categorical determination under the Industrial Insurance Act, Tr. 969.

The ALJ gave only partial weight to the opinions of Dr. Early and Dr. Powell finding that 1) the opinions are generally consistent with the longitudinal medical evidence, 2) that the opinions were "remote in time, having occurred in 2003,"[2] and 3) that the opinions were tailored to the Washington Industrial Insurance Act. Tr. 29.

Wier challenges the ALJ's assignment of partial weight arguing that the opinions were not remote in time, as they occurred during the relevant time period in 2007 and 2009, and that although the opinions included a categorical determination under the Industrial Insurance Act, both examination reports contained detailed observations, discussion, and GAF scores. Pl.'s Br. 11. The Commissioner responds, similar to above, that discounting the opinions because they are "tailored" to the Industrial Insurance Act is a valid reasonable basis to discount the opinions. Def.'s Br. 11. The Commissioner concedes that the ALJ incorrectly identified the date of the opinions. Def.'s Br. 11 n.3.

I agree with Wier that the ALJ improperly discounted the opinions of Dr. Early and Dr. Powell. As discussed above, simply because a medical opinion includes a categorical determination, such as for the Industrial Insurance Act or any other program, does not make the detailed findings, observations, and conclusions that are used to reach that categorical determination any less valid for purposes of evaluating Wier's disabilities. The medical opinions by both Drs. Early and Powell contained numerous pages of well-supported observations,

---

[2] The Commissioner contends this was an inadvertent error and does not rely on it in defending the ALJ's findings.

findings, and conclusions separate from the categorical determination under the Industrial Insurance Act. Further, simply containing a categorical determination does not mean that the opinions were "tailored" to the Industrial Insurance Act. As such, the opinions cannot be discounted simply because they also contain a categorical determination under a separate state insurance system.

### c.  Dr. John Nance

Dr. Nance reviewed Wier's full medical records, replied to interrogatories, and testified at Mr. Wier's hearing, but Dr. Nance did not examine Wier. Tr. 1227-34. Overall Dr. Nance found that Wier only had moderate impairments, with the exception of finding marked limitations in Wier's ability to work with the public. Tr. 1227-28. The ALJ gave great weight to Dr. Nance's opinion and found that 1) it was consistent with the longitudinal record, 2) it was based on a review of the entire record, and 3) it considered the impact of Wier's conditions on his ability to perform work in general, not just as a bus driver. Tr. 28.

Wier argues that the ALJ erred in giving great weight to Dr. Nance because 1) the ALJ failed to address the conflicting conclusions between Dr. Nance and Wier's treating psychiatrists, 2) the ALJ improperly gave more weight to Dr. Nance as a reviewing doctor over Wier's treating psychiatrists, and 3) the ALJ improperly gave weight to Dr. Nance for evaluating Wier's ability to perform work other than a bus driver, even though other doctors also considered this same issue. Pl.'s Br. 14.

The Commissioner responds that it was reasonable to give great weight to Dr. Nance's opinion because 1) the ALJ was faced with a complicated record and 2) the ALJ may discount the opinion of treating physicians in favor of reviewing physicians when giving legitimate and specific reasons, supported by the record, for doing so. Def.'s Br. 12.

The opinion of a treating physician is generally given deference and authority over a nontreating physician. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The same goes for the opinion of an examining physician over a nonexamining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, an ALJ may reject the opinion of the treating physician if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan*, 169 F.3d at 600 (citing *Andrews*, 53 F.3d at 1041). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, the ALJ failed to meet her burden. Dr. Nance made findings that Wier had only moderate impairments, with the exception of Wier's ability to work with the public, and these findings were largely contrary to the existing medical opinions of both treating and examining physicians. Neither in Wier's hearing nor in interrogatories did Dr. Nance explain his contrary findings.

Yet, the ALJ chose to rely on those contrary findings rather than the medical opinions of the treating and examining physicians. The ALJ gave three reasons for doing so: 1) Dr. Nance's opinion was consistent with the longitudinal record, 2) Dr. Nance's opinion was based on a review of the entire record, and 3) Dr. Nance's opinion considered the impact of Wier's conditions on his ability to perform work in general, not just as a bus driver. Tr. 28. These reasons fail to meet the "detailed and thorough summary of the facts and conflicting evidence

stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton*, 799 F.2d at 1408. Rather, these justifications for relying on a nontreating and nonexamining physician are broad and conclusory. Because of this, the ALJ improperly gave great weight to Dr. Nance's medical opinion as a reviewing doctor over that of Wier's treating and examining physicians.

### IV. <u>Weight Assigned to Wier's Testimony</u>

Wier also challenges the ALJ's decision to not credit his testimony. Pl.'s Br. 15. The ALJ found Wier's testimony to not be credible for two reasons: 1) because Wier's testimony was not consistent with the objective medical evidence, which included periods of improvement, and because Wier did not follow through in participating in CBT treatment as recommended, and 2) because Wier's testimony regarding intact daily activities was at least partially inconsistent with what he reported to his doctors, including the number of hallucinations he experienced and daily living activities, such as preparing meals and driving a car, and social activities, such as hunting and fishing, in which he participated. Tr. 25.

Wier argues that the ALJ erred in discrediting his testimony because 1) the fact that his condition periodically improved is not a clear and convincing reason for rejecting his testimony as to his symptoms, 2) improvements in conditions generally occurred during periods when he was not working and could live an isolated life, 3) regarding CBT treatment, the medical opinions were not unanimous that it would be beneficial and a claimant's testimony should not be discounted when part of the reason for a lack of follow through on recommended treatment may be the claimant's underlying psychiatric issues, 4) there were not inconsistencies regarding hallucinations as Wier had also described these experiences, including nightmares and

flashbacks, to other doctors, and 5) the ALJ overstated Wier's intact living activities, as he struggles with self-care, daily living tasks including cooking and cleaning, and any social activities were very short-lived as the other Vietnam veterans that he was hunting and fishing with committed suicide. Pl.'s Br.'s 15-19.

The Commissioner responds that the ALJ reasons for discounting Wier's testimony were valid, including that 1) Wier refused to participate in CBT therapy, 2) Wier's claimed symptoms regarding hallucinations were inconsistent among doctors and medical opinions, 3) Wier's daily activities suggest that he is capable of performing simple occupational tasks, and 4) the medical evidence did not support Wier's allegations of symptoms. Def.'s Br. 4-6.

To discount or not credit a claimant's testimony without evidence of malingering, an ALJ must provide clear and convincing reasons for rejecting the testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ failed to meet this burden.

Discounting Wier's testimony because his conditions "waxed and waned over time" and because he failed to participate in CBT treatment was improper. First, while Wier's symptoms may have fluctuated over time that does not mean that his medical conditions were any less severe. "It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). I agree with Wier that any improvements were short-lived. For example, a period of marked improvement observed by Dr. Dillon was followed months later by Dr. Boyd describing Wier as lethargic with depressed posture and slow and halting speech. Tr. 831. Overall, Wier's testimony seems largely consistent with the objective medical evidence, including periods of improvement of symptoms followed by periods of decline.

Discounting Wier's testimony for his failure to participate in CBT treatment was also improper. Dr. Weimer suggested CBT to Wier, Tr. 936, 943, 946, as did Dr. Boyd, Tr. 832. However, during this time period Dr. Weimer also observed Wier being quite resigned, feeling hopeless, and describing his insight and judgment as poor. Tr. 936. Relatedly, Wier stated that he hated coming to therapy and going outside because he has to deal with people, which activates his anxiety. Tr. 943. The ALJ wrongly faulted Wier for not attending CBT therapy. First, his doctors who recommended CBT therapy recognized that his judgement at the time was poor. Second, I cannot fault a patient for not taking actions that would further activate his symptoms, such as traveling by car and going in public places in order to seek further treatment. Third, Wier's conditions certainly impaired his ability to see the benefit of the CBT treatment. Put another way, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24. Fourth, not all of Wier's doctors believed that CBT therapy would help. For example, Dr. Early believed it was unlikely that CBT therapy would lead to any meaningful improvement. Tr. 845. In sum, the ALJ erred in discounting Wier's testimony because of his waxing and waning symptoms and his failure to attempt to CBT therapy.

The ALJ also erred in relying on Wier's allegedly contradictory testimony regarding hallucinations and inconsistencies regarding daily living activities. First, the ALJ found Wier to be giving contradictory statements because in June 2009 Wier said he didn't experience hallucinations but in September 2009 Wier told Dr. Martin that he experienced 8-10 hallucinations on a daily basis. Tr. 25. However, the ALJ misconstrues Wier's mention of hallucinations to Dr. Martin. Dr. Martin states that Wier "talk[ed] about *possible* visual hallucinations, seeing people with guns even during the day. This happened '8 or 10 times'

*today*." Tr. 1146 (emphasis added). The ALJ construed this as Wier "experienc[ing] 8-10 hallucinations of people with guns, on a *daily* basis." Tr. 25 (emphasis added). Wier did not state that he was experiencing hallucinations on a daily basis, and certainly not 8-10 times on a daily basis. Rather, that was what Wier experienced on that one particular day. Additionally, Dr. Martin stated that what Wier experienced were *possible* hallucinations. Possible is a key adjective here because Wier had previously shared with other doctors that he experienced repeated "nightmares" and "flashbacks." Because the ALJ misconstrued Dr. Martin's observations and ignored Wier's previous reports of nightmares and flashbacks, it was arbitrary to discount his testimony for not previously having reported hallucinations.

Lastly, the ALJ overstated Wier's social and daily activities. The ALJ discredited Wier's credibility because Wier claimed to have high anxiety around people but was able to "make friends ... and reported regularly leaving home to hunt and fish with other people." Tr. 25. Contrary to the assertion that these activities occurred "regularly," these social activities were very limited both in time and scope. They occurred over about a two month period where Wier went fishing with fellow Vietnam War veterans. However, this only occurred three times. Tr. 85-86. These activities ended because at least two of the other veterans committed suicide. Tr. 85-86. These seem to be very isolated activities and do not rise to the level of "regular" social activities. Wier, at the same time, struggles to complete normal daily activities, including needing reminders from his wife to shower, clean, and cook. Tr. 464. In conclusion, the ALJ failed in providing clear and convincing reasons and thus improperly rejected Wier's testimony.

### V.  Remedy for Deficiencies of ALJ's Findings

As discussed above, the ALJ's findings and ultimate decision contain reversible legal error. To remedy these errors, Wier requests remand for immediate payment of benefits, or in the

alternative, remand this case for further proceedings. This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). To remand for an award of benefits, three elements must be satisfied:

> (1) The record has been fully developed and further administrative proceedings would serve no useful purpose;

> (2) The ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

> (3) If the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The errors identified by this court are reversible. These errors, however, do not meet the third element identified above. Wier's case contains complex medical opinions from over eleven doctors, and this Court has not been provided with any information or evidence indicating that a disability finding would be *required* on remand if credited. Accordingly, this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002))).

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this matter is

REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby

ordered, upon remand:

1. The ALJ shall re-weigh the opinions of Wier's treating psychiatrists, as well as Drs. Early and Powell. These opinions should not be discounted simply because they included a categorical conclusion under Washington's Industrial Insurance Act, as the underlying observations are still valid medical evidence from treating and examining sources.
2. Bearing in mind the weight given to Wier's treating and examining physicians, the ALJ shall re-determine the weight given to Dr. Nance's opinion.
3. The ALJ shall credit Wier as a credible source of testimony regarding his impairments.
4. The ALJ shall revise Wier's RFC in light of the weight assigned to the various medical opinions discussed above.
5. The ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental VE evidence as necessary.

IT IS SO ORDERED.

DATED this 9ᵗʰ day of April, 2018.

s/Michael J. McShane
Michael J. McShane
United States District Judge